IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL PERNELL | : | No. 18-518 |

## MEMORANDUM

PRATTER, J.                                                                    JULY 28, 2022

Michael Pernell seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), claiming that he is at serious risk of harm from the COVID-19 virus. Because Mr. Pernell's medical conditions do not rise to the level of a compelling and extraordinary reason, he has declined vaccination, and early release would not reflect the serious nature of his crime, the Court denies his motion.

### BACKGROUND

### I.    Mr. Pernell's Motion for Compassionate Release

In 2017, Mr. Pernell worked as a crane operator at the Wheelbrator Falls waste disposal plant. His job was to move waste out of trucks and into an incineration pit and then to spread it throughout the pit in preparation for incineration. The facility at Wheelbrator Falls regularly received waste disposal deliveries from pharmaceutical companies, which included bottles of various drugs, oxycodone among them. Despite the facility's express prohibition against scavenging, Mr. Pernell admitted to scavenging the waste in search of these substances and then selling them on the street for money. In addition, Mr. Pernell was in contact with a confidential witness from whom he agreed to buy an additional 15,000 Oxycodone 30 mg pills. This witness would deliver the pills to Mr. Pernell, and Mr. Pernell would then sell them and split the revenue with the confidential witness. Mr. Pernell was arrested in December 2017 and pled guilty to a

single-count information in January 2019 of attempted possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 846. On June 3, 2019, the Court sentenced him to 84 months of imprisonment followed by three years of supervised release, a $1,000 fine, and a $100 special assessment.

His sentence was set to begin on July 30, 2019. However, Mr. Pernell did not begin his sentence until June 10, 2021. He is presently incarcerated at the Federal Correctional Institute Schuylkill ("FCI Schuylkill"). At the time of his motion for compassionate release, he had served approximately six months of his 84-month prison sentence.

In December 2021, Mr. Pernell moved for compassionate release. He explains that he is a 43-year-old (now 44-year-old) male at higher risk from COVID-19 due to his obesity and smoking habit. Mr. Pernell also notes that he wants to receive the COVID-19 vaccine, but he alleges that vaccines are not being given to inmates at FCI Schuylkill. In addition, he claims that the efficacy of vaccines wanes over time, such that those inmates vaccinated at FCI Schuykill remain at higher risk of contracting COVID-19 due to new variants and the conditions inside the prison.

Mr. Pernell's medical records reflect that he has a history of asthma but has not used an inhaler for the past 12 years. He also noted that he smoked two cigars a day for 20 years. He is prediabetic and mildly obese, with a body mass index of 30.5.[1] He was offered the Pfizer COVID-19 vaccine on August 16, 2021, and he refused the vaccine at that time.

## II.    The Bureau of Prisons' Response to the COVID-19 Pandemic

The Bureau of Prisons ("the BOP") has taken many measures to "mitigate the spread of COVID-19 in [its] facilities" and protect the health of inmates. *BOP Modified Operations*, Bureau

---

[1] A body mass index of 30.0 and above is considered obese. *See About Adult BMI*, Centers for Disease Control & Prevention, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/index.html#InterpretedAdults (last visited July 20, 2022). Thus, Mr. Pernell's body mass index of 30.5 places him at the very low end of this category.

of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited July 20, 2022). The BOP limits outside visitors, limits inmate movement within the prison, requires inmates and staff to wear masks, and screens all staff daily for symptoms. If an inmate tests positive, the BOP immediately quarantines that inmate and tests and quarantines all contacts. The BOP has also put thousands of eligible prisoners—the elderly, the terminally ill, and those who have almost finished their sentences—in home confinement. 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g); CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516.

The BOP has offered vaccines to its staff members and inmates, including those at FCI Schuylkill. *COVID-19 Vaccine Implementation*, Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited July 26, 2022). Mr. Pernell is presently imprisoned at FCI Schuylkill, which houses 1,113 total inmates, 1,024 at the FCI and 89 inmates at the Camp. *FCI Schuylkill*, Bureau of Prisons, https://www.bop.gov/locations/institutions/sch/ (last visited July 26, 2022). As of July 2022, there had been 457 inmates and 73 staff members who had recovered from COVID-19, no inmate had died of COVID-19, and there are presently 3 reported active staff cases of COVID-19 at FCI Schuykill. Tbl. *FCI Schuykill*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 26, 2022).

### LEGAL STANDARD

For the most part, courts "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Before asking a court to modify a sentence, a prisoner must first have "fully exhausted" his administrative remedies within the prison before applying to a court.[2] 18 U.S.C. § 3582(c)(1)(A). Assuming a prisoner has met that threshold requirement, a court can, in limited circumstances, reduce a sentence for "extraordinary and compelling reasons."

---

[2] The Government concedes that Mr. Pernell has properly exhausted his administrative remedies here. Doc. No. 64, at 6.

§ 3582(c)(1)(A)(i). To count as extraordinary, the reason must be "[b]eyond what is usual, customary, regular, or common." *Extraordinary* (def. 1), *Black's Law Dictionary* (11th ed. 2019). To be compelling, the reason must be "irresistible," such that the court is "oblige[d]" or "force[d]" to reduce the sentence. *Compelling* (def. b.), in *Oxford English Dictionary* (2d ed. 1989); *Compel* (def. 1) in *id.* Examples of potential "extraordinary and compelling" reasons include terminal medical conditions, complications arising from old age, or difficult family circumstances. U.S.S.G. § 1B1.13 app. n. 1.[3] Once the prisoner has shown an extraordinary and compelling reason to warrant a sentence reduction, the Court must then consider the sentencing factors, set out in 18 U.S.C. § 3553, to decide if the sentence *should* be reduced, and by how much. 18 U.S.C. § 3582(c)(1)(A).

DISCUSSION

Mr. Pernell presents three reasons why the Court should grant him compassionate release: (1) medical conditions that place him at increased risk of becoming severely ill from a COVID-19 infection, (2) the risk of COVID-19 and new variants at FCI Schuylkill, and (3) the alleged lack of available vaccinations at FCI Schuylkill. *See* Doc. No. 62. The Government opposes Mr. Pernell's motion. The Court concludes that none of Mr. Pernell's asserted reasons are "extraordinary and compelling" and, besides, the sentencing factors counsel against his early release.

### I.   Mr. Pernell Has Not Shown Any "Extraordinary and Compelling" Reasons

In order to demonstrate an "extraordinary and compelling" medical reason sufficient to qualify for compassionate release, a prisoner must show that he suffers from "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-

---

[3] On its face, U.S.S.G. § 1B1.13 governs a "motion of the Director of the Bureau of Prisons" for compassionate release. Thus, this "policy statement is not binding on prisoner-initiated motions." *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021). Still, it is highly persuasive authority that "sheds light on the meaning of extraordinary and compelling reasons." *Id.*

4

care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. n.1(A)(ii). Mr. Pernell, however, does not have any serious physical or medical condition that diminishes his ability to care for himself while in prison, even given the risk of a COVID-19 infection.

## A. **Mr. Pernell's Medical Conditions Do Not Constitute Extraordinary and Compelling Reasons**

It is true that Mr. Pernell's obesity and smoking habits "may" make him "more likely to get very sick from COVID-19." *People with Certain Medical Conditions*, Centers for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 20, 2022). But Mr. Pernell does not argue that he is unable to care for himself or manage any of these conditions while in prison. In fact, his medical records demonstrate just the opposite, as he has no health restrictions and is not taking any medications. Thus, there is no reason for the Court to grant him compassionate release on this basis. *See United States v. Dobson*, No. 08-cr-00134, 2021 WL 1037852, at *4 (E.D. Pa. Mar. 18, 2021) (collecting cases).

Fighting this conclusion, Mr. Pernell claims that an internal memo circulated by the Department of Justice directed the United States to concede that an inmate meets his burden of demonstrating extraordinary and compelling reasons exist when he has a CDC listed high-risk medical condition. *See* Gov.'s Supp. Resp., Doc. No. 43, *United States v. Firebaugh*, No. 16-cr-20341 (S.D. Fla.). But, this argument, too, fails for a variety of reasons. First, outside of a mention in one Government brief that Mr. Pernell points to, the Court has no way of verifying this memo's existence nor its contents. Second, regardless of the memo's content, the Court is not bound to any DOJ internal guidance. *United States v. Mell*, No. 18-cr-757, 2021 WL 698506, at *4 (D.N.J. Feb. 23, 2021); *United States v. Donley*, No. 88-cr-66, 2021 WL 6197633, at * 5 (D.N.J. Dec. 30, 2021).

Third, even assuming that the Government had conceded Mr. Pernell met his burden of showing extraordinary and compelling reasons here, the Court would *still* be required to assess whether a reduction in sentence is appropriate under the factors set out in the sentencing guidelines. 18 U.S.C. § 3582(c)(1)(A). In short, this alleged DOJ guidance document is not the "get out of jail free card" that Mr. Pernell envisions.

### B.  Mr. Pernell's Generalized Fear of Contracting COVID-19 Is Not a Basis for His Release

Mr. Pernell also cited as a basis for his release his generalized fear of being infected with COVID-19. But that does not justify his release either. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (noting that the "possibility" that the virus "may spread to" a person in a prison "cannot independently justify compassionate release").

### C.  Mr. Pernell's Claim That There Is a Lack of Available Vaccines Is Unfounded and Also Not a Basis for his Release

Finally, Mr. Pernell asserts that FCI Schuylkill stopped offering vaccines to inmates as of September 2021. Doc. No. 62, at 1. But Mr. Pernell's medical records show that he was offered the Pfizer COVID vaccine in August 2021 and refused it. Doc. No. 65, at ECF 47. Although vaccines were temporarily unavailable in September 2021, the facility resumed offering the vaccine the following month. Doc. No. 64, at 7. Mr. Pernell has yet to obtain a vaccine. *Id.*

True, as Mr. Pernell points out, the COVID-19 virus continues to mutate, and new variants continue to be reported. Mr. Pernell points most specifically to the Delta variant and the risks it poses. Doc. No. 62, at 1. But the Pfizer vaccine has been documented as highly effective against severe illness from COVID-19 and identified variants such as the Delta and Omicron variants, particularly with a booster shot. *See New CDC Studies: COVID-19 Boosters Remain Safe, Continue to Offer High Levels of Protection Against Severe Disease Over Time and During Omicron and Delta Waves*, Centers for Disease Control & Prevention (Feb. 11, 2022),

https://www.cdc.gov/media/releases/2022/s0211-covid-19-boosters.html (last visited July 20, 2022).

The widespread availability of COVID-19 vaccines virtually eliminates the risk of death or serious injury as a basis for compassionate release. *Garrett v. Murphy*, 17 F.4th 419, 433 (3d Cir. 2021). A prisoner simply cannot expect success with a "claim[ed] fear of risk of contracting the virus while refusing medical treatment that would drastically reduce his risk." *United States v. Garcia*, No. 14-cr-20035, 2021 WL 1499312, at *3 (C.D. Ill. Apr. 16, 2021); *see also United States v. Gonzalez Zambrano*, No. 18-cr-2002, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021) ("Although defendant has a right to refuse medical treatment, the Court finds that it would be inappropriate to reward her refusal to protect herself by granting her release. It would be paradoxical to endorse a system whereby a defendant could manufacture extraordinary and compelling circumstances for compassionate release by unreasonably refusing the health care afforded to them."). "[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021); *accord United States v. Rivera*, No. 10-cr-632, 2022 WL 889048, at *4 (E.D. Pa. Mar. 25, 2022).

In sum, because Mr. Pernell can "provide self-care within the environment of a correctional facility" and could further protect himself from a COVID-19 infection by accepting a COVID-19 vaccine, he has not demonstrated an extraordinary or compelling reason to justify compassionate release. U.S.S.G. § 1B1.13 app. n. 1(A)(ii).

## II.    The Sentencing Factors Also Counsel Against Mr. Pernell's Release

Even if Mr. Pernell had demonstrated an extraordinary and compelling reason for his release, which he has not, the Court would then consider the sentencing factors set out in the United States Sentencing Guidelines. 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a). Under the

7

sentencing factors, the Court finds that Mr. Pernell's release is not warranted. Mr. Pernell's sentence of 84 months reflects the seriousness of his offense. 18 US.C. § 3553(a)(2)(A). Mr. Pernell admitted to selling drugs, including prescription narcotics, and attempted to acquire and sell approximately 15,000 more such pills. The opioid epidemic continues to ravage communities around the country and Mr. Pernell's participation in it is a serious offense. Furthermore, his imprisonment protects the public from further such conduct that might endanger others. *Id.* § 3553(a)(2)(C). Considering Mr. Pernell's violation of both his employer's policies about scavenging in order to find the drugs that he attempted to sell and federal law, his imprisonment also affords deterrence, both general and specific, against future similar criminal conduct. *Id.* § 3553(a)(2)(B). Plus, Mr. Pernell has not even served 12 months of his 84-month sentence. *See United States v. Bullock*, 833 F. App'x 934, 935 (3d Cir. 2021) (per curiam) (granting motion for summary affirmance of denial of compassionate release after finding that district court did not abuse its discretion in considering the 3553(a) factors, including the inmate's substantial time remaining to be served).

In sum, even if Mr. Pernell had demonstrated an extraordinary and compelling reason qualifying him for compassionate release, the Court would still reject his motion under the applicable sentencing factors.

CONCLUSION

For the foregoing reasons, the Court denies Mr. Pernell's motion for compassionate release. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE